UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>ESTATE OF CHARLES T. CLOSE,</td><td></td></tr>
<tr><td style="text-align:center">Plaintiff,</td><td></td></tr>
<tr><td style="text-align:center">v.</td><td>No. 22-CV-7449 (RA)</td></tr>
<tr><td>CIGNA HEALTH AND LIFE INSURANCE CORPORATION,</td><td>OPINION & ORDER</td></tr>
<tr><td style="text-align:center">Defendant.</td><td></td></tr>
</table>

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

RONNIE ABRAMS, United States District Judge:

Plaintiff, the Estate of Charles T. Close (the "Estate"), brought this action against Defendant Cigna Health and Life Insurance Corporation ("Cigna"), the claims administrator and fiduciary of Mr. Close's health insurance plan. The Estate alleges that Cigna owes it $686,723.14 in wrongly denied insurance claims. *See* Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Cigna, in turn, brought a counterclaim against the Estate, asserting that Mr. Close was over-reimbursed by $357,683.98 in wrongly approved claims. *See* ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Now before the Court is the Estate's motion to dismiss Cigna's counterclaim. For the reasons that follow, the motion is granted.

## BACKGROUND

Charles T. Close, an acclaimed American artist specializing in photorealistic portraits, was paralyzed in 1988 after a rare spinal artery rupture. Dkt. No. 5 ("Compl.") ¶¶ 10-11. Mr. Close was later diagnosed with Alzheimer's disease in 2013 and frontotemporal dementia in 2015. *Id.* ¶ 18. By 2015, Close was under the care and supervision of at-home nurses to support his daily medical needs. *Id.* ¶ 19. At that time, Close was a plan participant of an ERISA-governed health insurance plan ("Plan"), which Cigna administered. *Id.* ¶ 20. In 2017, Cigna, acting as a fiduciary

of the Plan, began a post-payment review of various paid claims from 2015 to 2017. Dkt. No. 27 ("Def. Am. Answer") ¶¶ 4, 23; Compl. ¶ 28. In 2018, Cigna notified Close that it had determined he had been improperly over-reimbursed by $357,683.98 for services that did not qualify under the Plan. Def. Am. Answer ¶ 11. Cigna's investigation concluded that Close's "claims for purported home health care" were not eligible for reimbursement under the Plan because they were "custodial services" and not medically necessary. *Id.* ¶¶ 8-9, 19, 26. As a result, Cigna "placed a flag" on Close's Cigna ID number, which required Close to provide additional medical records to support any future claims. *Id.* ¶ 12. Close appealed Cigna's determination several times, but Cigna denied each appeal. *Id.* ¶¶ 16-19; Compl. ¶ 34. The Estate asserts that Cigna refused to pay for Close's medical treatments from 2017 until Close's death in 2021. *Id.* ¶ 23.

In 2022, the Estate filed this action against Cigna pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶ 1. The Estate alleges that Cigna violated the Plan by wrongly denying Close's "medically necessary, skilled nursing and related healthcare claims." *Id.* ¶ 42. Since 2017, the Estate asserts, Cigna has made no payments and now owes the Estate at least $686,723.14. *Id.* In 2023, Cigna filed a counterclaim against the Estate for $357,683.98 in over-reimbursed claims pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). *See* Def. Am. Answer ¶¶ 21-32. Cigna argues that it "was induced to make the payments … by means of incorrect, unsupported information" that Close provided and that the Plan provides a right to recover overpayments. *Id.* The Estate now brings a motion to dismiss Cigna's counterclaim, arguing that the Court lacks subject matter jurisdiction and that Cigna's counterclaim should be dismissed under Rule 12(b)(6).

## LEGAL STANDARD

Federal courts are "courts of limited jurisdiction and must independently verify the existence of subject-matter jurisdiction before proceeding to the merits." *Singh v. United States Citizenship & Immigr. Servs.*, 878 F.3d 441, 445 (2d Cir. 2017), *as amended* (Jan. 9, 2018). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1). In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113. The party asserting subject matter jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." *Id.*

A motion to dismiss counterclaims pursuant to Rule 12(b)(6) is decided under the same standard as that of a motion to dismiss the claims in a complaint. *See Cityside Archives, Ltd. v. Weiss*, 2020 WL 3972310, at *3 (S.D.N.Y. July 13, 2020) (citation omitted); *Taupita Inv., Ltd. v. Benny Ping Wing Leung*, 2017 WL 3600422, at *6 (S.D.N.Y. Aug. 17, 2017). To survive a motion to dismiss, a counterclaim must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" when the pleaded factual content "allows the court to draw the reasonable inference" that the moving party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make that determination, the Court must "accept[] all factual allegations as true … but [is] not required to credit conclusory allegations or legal conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (internal quotation marks omitted). Courts limit their consideration to "the factual allegations in the Answer, the Counterclaims, and those documents attached as exhibits or incorporated by reference." *Gortat v.*

3

*Capala Bros., Inc.*, 585 F. Supp. 2d 372, 375 (E.D.N.Y. 2008) (citing *Faconti v. Potter*, 242 F.

App'x. 775, 777 (2d Cir. 2007)), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).

## DISCUSSION

### I.        Subject Matter Jurisdiction

The Estate first argues that the Court lacks subject matter jurisdiction to hear Cigna's

counterclaim due to the "probate exception." Dkt. No. 30 ("Pl. Br.") at 10.  The probate exception

is a judicially-created doctrine with a "distinctly limited scope," barring federal courts from

hearing certain probate matters. *Marshall v. Marshall*, 547 U.S. 293, 310 (2006) (citing *Markham*

*v. Allen*, 326 U.S. 490, 494 (1946)); *see Woitovich v. Schoenfeld*, 2022 WL 17979571, at *2

(S.D.N.Y. Dec. 28, 2022).    The exception "reserves to state probate courts" the power to annul a

will and administer a decedent's estate, and it "precludes federal courts from endeavoring to

dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311-12.

But "where exercise of federal jurisdiction will result in a judgment that does not dispose of

property in the custody of a state probate court, even though the judgment may be intertwined with

and binding on those state proceedings, the federal courts retain their jurisdiction." *Lefkowitz v.*

*Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007).

The Court has subject matter jurisdiction over Cigna's counterclaim.  As an initial matter,

the Estate relies on federal question jurisdiction to bring its ERISA claim, *see* 28 U.S.C. § 1331,

and both parties agree that the Court has subject matter jurisdiction over the Estate's claim.  *See*

Def. Am. Answer ¶ 2.[1]  Accepting as true the facts pled by both parties, the probate exception to

---

[1] Although the parties disagree as to whether Cigna's counterclaim is permissive or compulsory, *see* Fed. R. Civ. P. 13, the Court has jurisdiction either way.  Compulsory counterclaims do not require an independent grant of jurisdiction. *See Moore v. New York Cotton Exch.*, 270 U.S. 593, 609 (1926); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210 (2d Cir. 2004).  While permissive counterclaims do require independent grounds of jurisdiction, jurisdiction is satisfied under the supplemental-jurisdiction statute if the counterclaim forms "part of the same case or controversy" as the original.  *See* 28 U.S.C.A. § 1367.

subject matter jurisdiction is inapplicable.  Cigna does not ask the Court to probate or annul a will

or to administer an estate.  Nor is there a plausible allegation that the *res* at issue—$357,683.98

that Cigna provided to Mr. Close between 2015 and 2017—is "in the custody" of any state probate

court.  *Marshall*, 547 U.S. at 312.  Even if the Court were to take judicial notice of any open

probate proceedings for Mr. Close's estate, *see* Dkt. No. 36 ("Pl. Reply Br.") at 8-9, this fact alone

does not erase federal jurisdiction.  Indeed, given the fungible nature of money, it is entirely

speculative to assume that various payments Close received as early as 2015 are necessarily now

in the custody of a state probate court.  *See Montanile v. Bd. of Trustees of Nat. Elevator Indus.*

*Health Benefit Plan*, 577 U.S. 136, 144-45 (distinguishing between "specifically identified funds

that remain in the defendant's possession" and "traceable items that the defendant purchased with

the funds" from "nontraceable items," including purchases from someone's general assets).  At

this juncture, therefore, the Court retains jurisdiction.  *Lefkowitz*, 528 F.3d at 106 ("[I]f jurisdiction

otherwise lies, then the federal court may, indeed must, exercise it.").[2]

---

That standard is easily met here, where Cigna's over-reimbursement claim and the Estate's under-reimbursement claim "derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)).  Both claims relate to the same contract (Cigna's Plan), concern the same federal law (ERISA), and boil down to the same factual question: Were the services provided to Mr. Close medically necessary or custodial in nature?

[2] In any event, the Second Circuit has never directly addressed the question of whether the probate exception even applies to federal question cases. *See In re Boisseau*, 2017 WL 395124, at *2 (N.D.N.Y. Jan. 30, 2017); *United States v. Blake*, 942 F. Supp. 2d 285, 295 (E.D.N.Y. 2013).  Several circuits have found "no good reason" to treat diversity and federal-question cases differently. *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006); *see also In re Marshall*, (*Marshall I*) 392 F.3d 1118, 1131-32 (9th Cir. 2004), *rev'd on other grounds sub nom. Marshall II*, 547 U.S. 293 (2006); *Tonti v. Petropoulous*, 656 F.2d 212, 215 (6th Cir. 1981). *But see In re Goerg*, 844 F.2d 1562, 1565 (11th Cir. 1988) (finding that the probate exception "has no bearing on federal question jurisdiction"). The Second Circuit, however, continues to define the probate exception as "an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Sasson v. Mann*, 2022 WL 1580596, at *2 (2d Cir. May 19, 2022) (quoting *Lefkowitz*, 528 F.3d at 105) (emphasis added).  If the exception does not apply to federal question cases, that would provide an additional basis to defeat the Estate's jurisdictional argument with respect to Cigna's counterclaim.

## II.     Equitable or Legal Relief

The Estate next asserts that Cigna fails to state a claim under ERISA because it seeks legal, rather than equitable, relief.  The Court agrees.

Section 502(a)(3) of ERISA allows plan fiduciaries to bring a civil action to either (1) enjoin any act that violates the terms of the plan, or (2) "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of … the terms of the plan."  29 U.S.C.A. § 1132(a)(3).  To properly state a claim, a party must therefore establish that the relief sought is equitable in nature.  *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006). Because "'[e]quitable' relief must mean *something* less than *all* relief[,]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 n.8 (1993), the U.S. Supreme Court has held "that the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens*, 508 U.S. at 256); *see id.* at 217 (discussing the "law-equity dichotomy" between common law courts of equity and courts of law).

For example, a fiduciary seeking "to impose personal liability" on a plan participant "for a contractual obligation to pay money" cannot sue under Section 502(a)(3) because such relief "was not typically available in equity," and money damages are the classic form of legal, not equitable, relief. *Id.* (citing *Mertens*, 508 U.S. at 255); *cf. Montanile*, 577 U.S. at 145 ("Equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing … rather than a right to recover a sum of money generally out of the defendant's assets.'").  But if a fiduciary seeks restitution through "a constructive trust or equitable lien on a specifically identified fund" rather than the plan participant's assets generally, then the fiduciary's action is proper under ERISA.  *Sereboff*, 547 U.S. at 363; *see Knudson*, 534 U.S. at

214 (noting that the court must determine if "[t]he kind of restitution" that a fiduciary seeks is

"equitable—the imposition of a constructive trust or equitable lien on particular property—[or]

legal—the imposition of personal liability for the benefits that they conferred upon" the plan

participant).

To be sure, distinguishing between proper "legal" relief and improper "equitable" relief is

no easy task.  *See, e.g.*, *Scholastic Corp. v. Najah Kassem & Casper & De Toledo LLC*, 389 F.

Supp. 2d 402, 403 (D. Conn. 2005) (noting that this legal landscape has "created real challenges

for those of us who have little training, let alone experience, in the subtleties of ancient writs").

But the Supreme Court and Second Circuit have provided some helpful guideposts.  First,

regardless of how a fiduciary couches its claims—whether relief is classified as an equitable lien,

a lien by agreement, a constructive trust, or otherwise—the fiduciary must identify a particular

fund from the plan participant to properly sue under Section 502(a)(3).  *Sereboff*, 547 U.S. at 363;

*see Coan v. Kaufman*, 457 F.3d 250, 263 (2d Cir. 2006) ("[M]oney damages are unavailable under

section 502(a)(3) when the plaintiff does 'not seek to recover a particular fund from the

defendant.'" (quoting 547 U.S. at 363)); *Union Lab. Life Ins. Co. v. Olsten Corp. Health & Welfare*

*Benefit Plan*, 617 F. Supp. 2d 131, 135 (E.D.N.Y. 2008).  Second, a fiduciary cannot establish a

claim in equity if the plan participant is "under no obligation to segregate" the funds at issue and

the fiduciary "does not allege" that the funds are segregated in a separate account.  *Nechis v. Oxford*

*Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005); *see Vacca v. Trinitas Hosp.*, 2006 WL

3314637, at \*4 (E.D.N.Y. Nov. 14, 2006); *Turcotte v. Blue Cross & Blue Shield of Mass., Inc.*,

2008 WL 4615903, at \*5 (S.D.N.Y. Oct. 14, 2008).  Finally, a fiduciary may only enforce its claim

if the specifically identified funds "remain in the defendant's possession" or there exist "traceable

items that the defendant purchased with the funds."  *Montanile*, 577 U.S. at 144-45 ("A defendant's

expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien."). Ultimately, fiduciaries bear the burden to show that they seek equitable, rather than legal, relief. *See Knudson*, 534 U.S. at 220 (declining to adjust ERISA's "'carefully crafted and detailed enforcement scheme' embodied in the text that Congress has adopted" (quoting *Mertens*, 508 U.S. at 254)).

Here, Cigna has not met its burden. It asserts that it can satisfy ERISA's requirements because it seeks to "enforce the terms of the Plan and recover identified overpayment amounts made by the Plan." Def. Am. Answer ¶ 23. This remedy is an "equitable right of recovery," Cigna insists, because it involves "specific payment amounts" that the Estate received "and as to which [Mr. Close] had no right to possess." *Id.* ¶ 25. Cigna also avers that "[a]n equitable lien by agreement exists in accordance with the Plan provisions governing recoupment of overpayments." *Id.* ¶ 31. However, while Cigna allegedly over-reimbursed Close by $357,683.98 in payments over several years, *Id.* ¶ 11, Cigna makes no factual allegations concerning whether the Estate segregated those funds in a separate account; if the Estate had any obligation to segregate them; where the funds are now; or if they can be traced back to the Estate. Instead, Cigna argues, "whether the overpaid funds, or assets acquired with those funds, remain in Plaintiff's possession … is an issue for discovery." Dkt. No. 35 ("Def. Br.") at 9.

Taken together, Cigna's assertions fail to state a claim under Section 502(a)(3) of ERISA because "the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006); *see also Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label."). Cigna cannot satisfy ERISA's "particular fund" requirement by simply alleging "specific payment

amounts" it made to Mr. Close over several years.  Fiduciaries suing under Section 502(a)(3) often

successfully pinpoint a "specifically identified fund" when their claims are grounded in a plan's

subrogation provision—a clause related to a fiduciary's right of recovery against a third party.

*Sereboff*, 547 U.S. at 363; *see Montanile*, 577 U.S. at 138 ("The terms of these plans often include

a subrogation clause requiring a participant to reimburse the plan if the participant later recovers

money from the third party for his injuries.").  In those cases, fiduciaries seek proper, equitable

relief because third-party settlements are specifically segregated from a plan participant's general

assets.[3]

   But Cigna's claim does not involve a subrogation clause, third party settlement, or another

mechanism by which disputed funds might be held in a segregated account.  Instead, the facts here

more closely resemble *Fehn v. Group Long Term Disability Plan for Employees of JP Morgan

Chase Bank*, where a fiduciary defendant similarly sought alleged overpayments of benefits.  2008

WL 2754069, at *1-2 (S.D.N.Y. June 30, 2008).  There, the court held that the fiduciary failed to

state a claim under Section 502(a)(3) because defendant did not "identify segregated funds in

plaintiff's possession, but merely attempt[ed] to impose a personal liability upon plaintiff."  *Id.* at

*4.  Although the fiduciary sought the return of specific funds that were improperly paid, it could

"not assert title or right to possession of particular property." *Id.*  All defendant could do was "show

just grounds for recovering money for a benefit plaintiff received."  *Id.*

   Cigna faces the same obstacle.  Here, Cigna seeks specific dollar amounts, but it has "failed

to identify any particular fund in defendants' possession, distinct from its general assets, from

---

[3] In *Sereboff*, for instance—after plan participants settled a third-party tort suit related to a car accident—the fiduciary brought an ERISA action to enforce a subrogation clause.  547 U.S. at 360.  Critically, the plan participants then set aside the disputed funds in a separate, identifiable investment account.  *Id.*; *cf. Knudson*, 534 U.S. at 214 (holding that a fiduciary could not maintain a similar reimbursement suit where settlement funds were not in the plan participant's possession).

which it seeks to be reimbursed." *Union Lab. Life Insurance Co.*, 617 F. Supp. 2d at 135-36. Indeed, there is "no indication or argument that the alleged overpayment in this case was retained separately" from the Estate's other funds. *Vacca*, 2006 WL 3314637, at *4. Cigna has also not claimed that the Estate was under any obligation to segregate any received funds. *See Turcotte*, 2008 WL 4615903, at *5. Although Cigna maintains that the Plan itself created an equitable lien by agreement, Def. Am. Answer ¶ 31, this allegation is conclusory, and the Court cannot draw a reasonable inference that such an agreement existed. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 157 (2d Cir. 2014) (holding that no equitable lien by agreement existed where a fiduciary did not identify a particular fund, distinct from plaintiff's general assets, nor a particular share of that fund to which it was entitled); *First UNUM Life Ins. Co. v. Alleyne*, 2009 WL 235543, at *3 (E.D.N.Y. Jan. 30, 2009) (noting that all rules governing equitable liens "presuppose that the plaintiff has identified a specific fund rather than seeking recovery from the defendant's assets generally"). Cigna's counterclaim therefore seeks legal, not equitable, relief. Since Cigna demands to be reimbursed for benefits wrongly paid out, its "quest [is] for money damages" and is improperly brought under Section 502(a)(3). *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004).

Finally, while discovery might be appropriate if the dispute rested on whether the Estate "dissipated [an identified] fund on nontraceable assets," *Montanile*, 577 U.S. at 151, here Cigna has failed to identify a fund at all. As the Supreme Court has emphasized, fiduciaries like Cigna are sophisticated; "plans have developed safeguards against participants' and beneficiaries' efforts to evade reimbursement obligations[,] … know how much medical care that participants and beneficiaries require, and have the incentive to investigate and track expensive claims." *Id.* at 150. Despite this, Cigna's factual allegations have not "raise[d] a right to relief above the speculative

level," *Twombly*, 550 U.S. at 555, or plausibly articulated why Mr. Close may have kept over

$300,000 in medical reimbursements segregated in a tracible fund without any obligation to do so.

Accordingly, the Court holds that Cigna has not stated a claim to relief that is plausible on its face

and declines Cigna's invitation "to perceive equitable clothing where the requested relief is

nakedly contractual." *Nechis*, 421 F.3d at 104.  Cigna's counterclaim is therefore dismissed.[4]  As

Cigna rightly notes, however, the Estate has not moved to strike its affirmative defenses related to

Cigna's asserted right to recover or offset the overpayments, and the Court declines now to strike

them sua sponte.  *See* Def. Br. at 2 n.2.

## CONCLUSION

For the foregoing reasons, the Estate's motion to dismiss Cigna's counterclaim is granted

without prejudice.  Should Cigna choose to amend, it shall file its amended counterclaim no later

than January 22, 2024.  The Clerk of Court is respectfully directed to terminate the motion pending

at Dkt. No. 30.

Dated:    December 21, 2023
          New York, New York

                                          Hon. Ronnie Abrams
                                          United States District Judge

---

[4] The Estate's alternative grounds as to why Cigna's counterclaim should be dismissed include arguments that its claim is time-barred, and that Cigna is precluded from asserting its counterclaim due to ERISA regulations.  *See* 29 C.F.R. § 2560.503-1.  Because the Court has already dismissed Cigna's counterclaim, it need not address these alternative grounds for dismissal.  *See Hall v. Kodak Retirement Income Plan*, 2008 WL 788577, at *5-6 (W.D.N.Y. Mar. 20, 2008).  The Court also declines to consider the Estate's arguments concerning recoupment and unjust enrichment because Cigna has clarified that its sole counterclaim "is plainly an equitable claim under section 1132(a)(3) to enforce the terms of the Plan." *See* Def. Br. at 8.